UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

GEORGE L. FARMER, ESQ.,

   Plaintiff,

v.

J. LAURENCE KENT, ESQ.,
JOHN KIDWELL, ESQ. and
KIDWELL & KENT, *a Maryland Partnership, individually, jointly, and severally*,

   Defendants.

Civil Action No. TDC-20-1806

**MEMORANDUM OPINION**

Plaintiff George L. Farmer has filed suit against Defendants J. Laurence Kent, John Kidwell, and the law firm of Kidwell & Kent ("the Kidwell & Kent Firm") regarding a series of events involving Louise Williams Marsh ("Mrs. Marsh"), an elderly woman who entered into an agreement with Farmer, an attorney, to investigate actions taken by Kent as her attorney and representative. Farmer has alleged tortious interference with economic relationship, legal malpractice, and willful and malicious acts against Kent; vicarious liability against the Kidwell & Kent Firm; and partnership liability against all Defendants. Presently pending before the Court is Defendants' Motion to Dismiss. Having reviewed the operative complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

The following facts relevant to the disposition of the Motion are presented in the light most favorable to Farmer, the non-moving party.

### I.     Kent's Legal Representation

Mrs. Marsh, a 94-year-old Maryland resident, was married to Richard Wade Marsh, Sr. ("Mr. Marsh Sr."), who passed away on January 22, 2009.  The couple had a son, Richard Wade Marsh., Jr., ("Mr. Marsh Jr."), with whom Mrs. Marsh lived in Silver Spring, Maryland until Mr. Marsh Jr. died on April 20, 2020.  At the time of his death, Mr. Marsh Jr. was married to Thuan Nguyen, who had been Mrs. Marsh's full-time caretaker since March 2018.

Kent, an attorney at the Kidwell & Kent Firm located in Rockville, Maryland, had represented Mrs. Marsh, Mr. Marsh Sr., and Mr. Marsh Jr. for many years.  On January 20, 2010, Mrs. Marsh granted a general Power of Attorney to Kent for all personal matters.  The same day, Kent was designated as the successor trustee for the Louise W. Marsh Trust ("the Trust"), a trust previously created to hold Mrs. Marsh's assets, in the event that Mrs. Marsh, the trustee, was unable to serve in that capacity.  On April 20, 2020, following Mr. Marsh Jr.'s death, the Circuit Court for Montgomery County, Maryland appointed Kent as one of two temporary guardians of Mrs. Marsh pursuant to an Emergency Petition.  *See In the Matter of Louise Williams Marsh for the Appointment of a Guardian of the Person and Property*, No. 168815FL (Cir. Ct. Montgomery Cty. filed Apr. 20, 2020), *available at* http://casesearch.courts.  Farmer does not dispute that "[a]t all relevant times . . . Mrs. Marsh was defendant Kent's client."  Am. Compl. ¶ 214, ECF No. 11. After a hearing on October 8, 2020, Kent was appointed as one of Mrs. Marsh's two permanent Guardians of Person and Property.

### II.    Farmer's Legal Representation

On March 3, 2020, one day after Mr. Marsh Jr. was hospitalized, Kent arrived at Mrs. Marsh's residence and requested that Mrs. Marsh sign a document that would enable Kent to pay bills on behalf of Mrs. Marsh and Mr. Marsh Jr.  According to Nguyen, who was present, when

2

Mrs. Marsh asked that Kent read the document to her, he did not read it in its entirety. When Mrs. Marsh refused to sign the document, Nguyen stated that Mrs. Marsh would not sign without the consent of Mr. Marsh Jr.  At Kent's request, Nguyen took Mrs. Marsh to the hospital, and after Kent secured Mr. Marsh Jr.'s consent, Mrs. Marsh signed the document.  Although Nguyen requested that Kent provide her with a copy of the document that Mrs. Marsh had signed, Kent refused to do so.  On March 6, 2020, Nguyen received a copy of the document by mail, but upon review, Nguyen noted that the document received was one page longer than the document Mrs. Marsh had signed and had certain different provisions and language.

As a result of these events, Nguyen retained the services of Farmer, a New Jersey attorney who had represented Nguyen's brother and other family members in the past, to investigate Kent's actions. On March 4, 2020, Farmer and Nguyen met with Mr. Marsh Jr. at the hospital. Mr. Marsh Jr. expressed concern about how Kent was handling money in the Trust and whether Kent was doing anything improper.  Following that meeting, on March 5, 2020, Farmer drafted a letter seeking information from Kent about these issues.  The letter included authorization from Mrs. Marsh instructing Kent to provide Farmer with documents to investigate Mrs. Marsh's finances and other matters.  Nguyen hand delivered the letter to Kent that same day.

On March 6, 2020, Kent again arrived at Mrs. Marsh's residence and sought her signature on another document to give him access to Mrs. Marsh's accounts.  After Nguyen notified Farmer of the visit, Farmer and Kent had a telephone conversation during which Kent stated that he was not going to provide Farmer with the documents requested in the March 5, 2020 letter.  That same day, Farmer entered into a written retainer agreement with Mrs. Marsh.  The retainer agreement is printed on letterhead that reads "George L. Farmer, Attorney at Law," lists as Farmer's address a location in Northfield, New Jersey, and is entitled "Legal Representation Retainer Agreement."

3

Retainer Agreement at 1, Opp'n Mot. Dismiss Ex. 21, ECF No. 26-24.  The agreement describes Farmer's services as "to represent your interests in reviewing Mr. Kent's prior services and documents, as well as the financial accounts including, but not limited to, the documents he had you sign recently, the trust agreement(s), your will, the financial accounts, the expenditures from the accounts, etc. with the purpose of determining if there are any improprieties."  *Id*.  The agreement authorizes Farmer to "perform these services, obtain the aforementioned documents, and take whatever steps" Farmer deems "necessary . . . to protect your interests."  *Id.*  The agreement concludes by stating that Mrs. Marsh, in signing the agreement, has agreed to "waive any conflicts that might exist" from Farmer's simultaneous representation of Nguyen.  *Id.* at 2.  The letter bears Mrs. Marsh's notarized signature, executed on March 6, 2020.

After Mrs. Marsh signed the retainer agreement, Farmer sought, on multiple occasions, to gain access to documents and materials, including bank and brokerage account statements from Mrs. Marsh's bank and investment advisor, relevant to Kent's activities.  However, at each stage, Kent refused to comply with Farmer's requests.  According to Farmer, Kent actively sought to thwart his efforts, including by freezing Mrs. Marsh's bank accounts such that she was not able to access her money to pay Farmer for his services.

On April 17, 2020, Kent filed a Petition for Guardianship relating to Mrs. Marsh in the District Court of Maryland for Montgomery County.  Kent did not serve a copy of the pleadings on Farmer.  Because Farmer is not an attorney licensed to practice in Maryland, he submitted an application to be admitted *pro hac vice* to the Montgomery County District Court in order to represent Mrs. Marsh and protect her interests in the guardianship proceedings.  Kent opposed the application, arguing that Mrs. Marsh was adequately represented through court-appointed counsel

and that Farmer lacked standing as he was not a party in the matter and did not qualify as an interested person. The court denied Farmer's *pro hac vice* application.

On May 25, 2020, Farmer presented an invoice for the "legal services" he performed for Mrs. Marsh to Robert McCarthy, the other temporary guardian of Mrs. Marsh's property. Am. Compl. ¶ 161. Farmer never received any payment from McCarthy.

### III. Procedural History

On June 12, 2020, Farmer filed the original Complaint in this case, which he amended on July 20, 2020. Farmer alleges three counts against Kent: (1) tortious interference with economic relationship; (2) legal malpractice; and (3) "willful and malicious acts." Am. Compl. at 29. Farmer also alleges one count of vicarious liability against the Kidwell & Kent Firm, and one count of partnership liability against all three Defendants.

## DISCUSSION

In their Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants argue that Farmer has failed to state plausible claims for relief. After the briefing on the Motion concluded, Farmer filed an Addendum to Plaintiff's Memorandum of Points and Authorities. Under Local Rule 105.2(a), "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Having considered Farmer's submission, the Court concludes that the surreply is not warranted or necessary for the fair resolution of the Motion. The Court will therefore strike Farmer's addendum.

### I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of

self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Documents attached to the complaint or a motion to dismiss may be considered if "they are integral to the complaint and authentic." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Where the signed agreement between Farmer and Mrs. Marsh is attached to Farmer's brief in opposition to the Motion, is directly relevant to Farmer's claims, and is of unquestioned authenticity, the Court may consider this document. The court may also take judicial notice of matters of public record. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Accordingly, in resolving the Motion, the Court will take judicial notice of, and consider the record of, the Maryland state court guardianship proceedings relating to Mrs. Marsh.

## II.   Choice of Law

As a preliminary matter, the parties disagree on the applicable substantive law. In cases arising under diversity jurisdiction such as this one, a district court applies the conflict-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Although Farmer argues that New Jersey law applies because it governed his retainer agreement with Mrs. Marsh, he has not asserted a breach of contract claim; rather, all of his claims sound in tort. For tort claims, Maryland law applies the principle of *lex loci delicti*, under which the applicable law is that of the state or country in which the last event or action necessary to make a defendant liable for an alleged tort occurred. *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999).

Where Farmer claims that Kent, a resident of Maryland who conducts business in Maryland, tortiously interfered with Farmer's contract with Mrs. Marsh in a series of actions that Farmer alleges took place in Maryland, and engaged in professional negligence relating to legal services provided in Maryland, the Court will apply Maryland law to resolve Farmer's claims.

## III.     Tortious Interference

Defendants seek dismissal of the tortious interference claim on the grounds that (1) because Farmer is not a Maryland attorney, the alleged interference with the retainer agreement is not a proper basis for a tortious interference claim; (2) because Kent was Mrs. Marsh's attorney and agent, he was a not a third party to the economic relationship as needed to support liability on a tortious interference claim; and (3) Kent's actions did not meet the standard for tortious interference under Maryland law.

Though Farmer frames his claim as one of "tortious interference with economic relationship," he specifically alleges that Kent interfered with his "prospective economic interest in his contract with Mrs. Marsh," and that absent Kent's interference, Farmer "would have received the anticipated economic benefits of his agreement with Mrs. Marsh." Am. Compl. ¶¶ 180, 207. Thus, Farmer's claim is properly construed as a common law claim of tortious interference with contract. Under Maryland law, "[t]o establish *a prima facie* case of tortious interference with contract, a plaintiff must show: (1) the existence of a contract or a legally protected interest between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach or otherwise render impossible the performance of the contract; (4) without justification on the part of the defendant; (5) the subsequent breach by the third party; and (6) damages to the plaintiff resulting therefrom." *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353-54 (4th Cir. 2013) (quoting

*Blondell v. Littlepage*, 968 A.2d 678, 696 (Md. Ct. Spec. App. 2009)). "As a threshold matter, a claim for tortious interference with contract is not cognizable unless there is a valid agreement that is not . . . otherwise opposed to public policy, so that the law will not aid in upholding it." *Mansell v. Toys R Us, Inc.*, 673 F. Supp. 2d 407, 416 (D. Md. 2009) (quoting *Fraidin v. Weitzman*, 611 A.2d 1046, 1057 (Md. Ct. Spec. App. 1992)).

### A. Contract

Defendants argue that because Farmer has conceded that he is not an attorney licensed to practice in Maryland, he cannot validly provide legal services to Mrs. Marsh in the state, such that there was no valid contractual relationship upon which to base a claim of tortious interference. By Maryland state statute, "a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar." Md. Code Ann., Bus. Occ. & Prof. § 10-601(a) (LexisNexis 2018); *see also id.* § 10-602 ("Unless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including . . . 'attorney at law' . . . that the person is authorized to practice law in the State."). Therefore, because Farmer is not admitted to the Maryland bar, his agreement with Mrs. Marsh to provide legal services was invalid and cannot support a tortious interference claim. *See Mansell*, 673 F. Supp. 2d at 416 (requiring a "valid agreement" for a tortious interference with contract claim under Maryland law); *see also RCDI Const., Inc. v. Space/Architecture Planning & Interiors, P.A.*, 29 F. App'x 120, 122-23 (4th Cir. 2002) (affirming the district court's dismissal of a tortious interference with contract claim under North Carolina law because the general contractor party to the construction contract at issue was not a licensed contractor at the time of the agreement, as required by state law).

Moreover, under Maryland law, a tortious interference claim may not be based on an agreement "opposed to public policy" such that "the law will not aid in upholding it." *Mansell*,

673 F. Supp. 2d at 416.  A contract may be invalid on public policy grounds if the "public policy that conflicts with the contract is embedded in the Maryland Constitution, statutory enactments, or administrative regulations."  *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 970 (D. Md. 2019).  As discussed above, the unlicensed practice of law is prohibited by Maryland state statute.  This prohibition has a public policy purpose:  "to protect the public from being preyed upon by those not competent to practice law—from incompetent, unethical, or irresponsible representation."  *In re Application of R.G.S.*, 541 A.2d 977, 983 (Md. 1988); *see Att'y Grievance Comm'n of Maryland v. Brisbon*, 31 A.3d 110, 119-20 (Md. 2011) (noting that the goals referenced in *In re Application of R.G.S.* are achieved by "emphasizing the insulation" of the public from the unlicensed practice of law).  Thus, where Maryland law has articulated a public policy against the unlicensed practice of law in the state, and Farmer is not a licensed attorney in Maryland, the Court finds that the retainer agreement cannot provide the basis for a tortious interference claim because it is contrary to public policy.  *See Mansell*, 673 F. Supp. 2d at 416; *RCDI Const., Inc.*, 29 F. App'x at 122-23 (finding no tortious interference claim under North Carolina law where the contract with an unlicensed contractor was "against public policy").

On this issue, Farmer's only argument is that the retainer agreement was not actually an agreement for legal services.  This claim is wholly undermined by the contents of the agreement itself.  The retainer agreement was printed on letterhead identifying Farmer as an "Attorney at Law."  Retainer Agreement at 1. The subject line of the agreement explicitly identified the document as a "Legal Representation Retainer Agreement."  *Id.*  The language of the retainer agreement specifically stated that Farmer would "represent [Mrs. Marsh's] interests" in reviewing various documents, including legal documents such as her will and trust agreements, and that he would take any necessary actions "to protect [her] interests."  *Id.*  It also secured Mrs. Marsh's

agreement to waive any conflicts of interest arising from his representation of Nguyen, an issue relevant only to a legal representation. Beyond the plain language of the contract itself, after its execution, Farmer specifically sought to represent Mrs. Marsh in the Montgomery County District Court case, and he later presented "his invoice for the *legal services* he provided for Mrs. Marsh" to one of Mrs. Marsh's temporary guardians. Am. Compl. ¶¶ 161 (emphasis added). The retainer agreement thus was, in form, substance, and execution, an agreement to provide legal services. *See Att'y Grievance Comm'n of Maryland v. Hallmon*, 681 A.2d 510, 514 (Md. 1996) (holding that the "practice of law" includes the "interpretation" of "legal documents" and "the giving of legal advice," even when trial work is not involved). Accordingly, as discussed above, the tortious interference claim fails because the contract that was subject of the alleged interference was invalid and against public policy.

### B.     Third Party

Farmer's tortious interference claim fails for another reason. Under Maryland law, tortious interference "arises only out of the relationships between three parties" which include "the parties to a contract . . . and the interferer." *K & K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989). Thus, "recovery for the tort of intentional interference with a contract when both the defendant and the plaintiff were parties to the contract" has "never [been] permitted." *Id.* at 974 (quoting *Wilmington Tr. Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981)). By extension, "an agent of a party to a contract, acting within the scope of the agency relationship" also cannot tortiously interfere with the contract. *Goode v. Am. Veterans, Inc.*, 874 F. Supp. 2d 430, 447 n. 12 (D. Md. 2012) (citing *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 313 (Md. Ct. Spec. App.1995)). Accordingly, "[i]f the actor who is interfering with the relationship is an agent of one of the actors

in the relationship, their claim for tortious interference fails." *Byington v. Vega Biotechnologies, Inc.*, 869 F. Supp. 338, 342-43 (D. Md. 1994).

Dating back to January 20, 2010, Kent has held a general Power of Attorney on behalf of Mrs. Marsh and thus has been a part of a broad principal-agent relationship with Mrs. Marsh since that date. *See King v. Bankerd*, 492 A.2d 608, 611 (Md. 1985) (holding that "[b]roadly defined, a power of attorney is a written document by which one party, as principal, appoints another as agent (attorney in fact)" and that such an instrument "creates a principal-agent relationship"); *Seaboard Sur. Co. v. Boney*, 761 A.2d 985, 992 (Md. 2000) (holding that an attorney-client relationship is also an principal-agent relationship). Farmer does not dispute this fact, or that Mrs. Marsh was Kent's client at all of the relevant times. Where the dispute between Farmer and Kent related to whether Kent was properly managing Mrs. Marsh's finances, a subject squarely covered by the Power of Attorney, the Court finds that because Kent was Mrs. Marsh's agent at the relevant time and acting within the scope of the agency relationship, he could not, as a matter of law, tortiously interfere the contract at issue. *See Byington*, 869 F. Supp. at 342-43.

For both of reasons discussed above, the Court will dismiss the tortious interference claim.

**IV.     Legal Malpractice**

Farmer also asserts a claim of legal malpractice against Kent. To state a proper claim for legal malpractice, Farmer has to allege facts sufficient to support a finding of "strict privity," which requires a showing of: (1) the attorney's employment; (2) [the attorney's] neglect of a reasonable duty; and (3) loss to the client proximately caused by that neglect of duty." *Flaherty v. Weinberg*, 492 A.2d 618, 624 (Md. 1985). Thus, "a prerequisite for maintaining a negligence action against an attorney is that the plaintiff establish an employment relationship between [the plaintiff] and the attorney." *Id.* at 627. A non-client third party, as a matter of law, is ordinarily unable to

11

maintain a malpractice action because the attorney's professional obligations extend only to the client. *Blondell v. Littlepage*, 968 A.2d 678, 686 (Md. Ct. Spec. App. 2009).  As Farmer has never claimed that he was a client of Kent, he has not demonstrated the privity required to support a legal malpractice claim.  Even if the Court were to conclude that Farmer had a valid retainer agreement with Mrs. Marsh, a "co-counsel relationship will [also] not suffice" to establish a duty of reasonable legal representation and support a legal malpractice claim.  *Conwell Law LLC v. Tung*, 109 A.3d 1227, 1247 (Md. Ct. Spec. App. 2015).

       Farmer nevertheless argues that even though he was not Kent's client, Kent had a duty to him as a third-party beneficiary of the attorney-client relationship between Mrs. Marsh and Kent. For a third party to have a viable legal malpractice action, that party must establish that "the intent of the client to benefit the nonclient was a direct purpose of the transaction or relationship." *Flaherty*, 492 A.2d at 625.  Farmer, however, has not alleged any facts showing that Mrs. Marsh intended for Farmer to benefit from Kent's representation, especially where Kent formed the attorney-client relationship with Mrs. Marsh many years ago and has held the Power of Attorney since 2010.  Mrs. Marsh was not even introduced to Farmer until 2020.  To the extent that there were any intended third-party beneficiaries, they would have been those to whom Mrs. Marsh intended to convey her assets, such as Mr. Marsh Jr., not Farmer.  Any conceivable benefit to Farmer, such as payment for services he rendered, would have been "incidental" and thus insufficient to support a legal malpractice claim, particularly when Farmer and Kent were in an adversarial posture.  *See Goerlich v. Courtney Indus., Inc.*, 581 A.2d 825, 828 (Md. 1990) (holding that the third-party beneficiary exception does not apply when the benefit is incidental and has limited application in adversarial contexts).

Because Kent has never owed Farmer a duty as an attorney, the Court finds that Farmer's claim of legal malpractice fails as a matter of law. The Court will therefore dismiss this claim.

## V. Willful and Malicious Acts

Farmer also alleges that Kent is liable for "willful and malicious acts" as an independent cause of action. This claim is not grounded in any cognizable common law tort under Maryland law and thus will be dismissed. *See Iqbal*, 556 U.S. at 678.

## VI. Imputed Liability

Farmer further alleges that the Kidwell & Kent Firm is vicariously liable for Kent's actions because Kent was acting as an agent of the firm when engaging in the allegedly tortious and professionally negligent activity. Vicarious liability is "not an independent cause of action, but rather a theory of assigning liability." *McCullough v. Liberty Heights Health & Rehab. Ctr.*, 830 F. Supp. 2d 94, 97 (D. Md. 2011). Because the Court has concluded that Kent is not himself liable for any of the other claims asserted by Farmer, the Kidwell & Kent Firm cannot be vicariously liable for those same claims.

Relatedly, Farmer asserts that the Kidwell & Kent Firm, as well as Kent and Kidwell individually, as partners of the firm, are liable for Kent's actions under a theory of partnership liability. Again, because the Court has concluded that there are no viable claims against Kent, there necessarily are no viable claims against the other Defendants under this theory.

Finally, because the Court finds that each of Farmer's claims fail as a matter of law, the Court need not address Defendants' other arguments for dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED. A separate Order shall issue.

Date: February 23, 2021  /s/ *Theodore D. Chuang*
THEODORE D. CHUANG
United States District Judge